IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. No. 07-374M (DAR) |
| ) | |
| GROVER KEITH JARRELL, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

*"[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance."*[1] Mr. Jarrell respectfully submits this memorandum requesting that the Court consider his entire life and all that he has done, rather than just this offense, in contemplating a sentence "sufficient but **not greater than necessary**" to satisfy all of the statutory purposes of sentencing. 18 U.S.C. §3553 (emphasis added).

**THE COURT MUST IMPOSE A SENTENCE "SUFFICIENT BUT NOT GREATER THAN NECESSARY" TO COMPLY WITH THE PURPOSES OF 18 U.S.C. § 3553**

As the Court is well aware, the guidelines are now advisory only, that is, one among a number of factors to be weighed by the sentencing court. United States v. Booker,

---

[1] United States v. Adelson, 441 F. Supp.2d 506 (S.D.N.Y. 2006) ("This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant'.")

543 U.S. 220 (2005); United States v. Price, 409 F.3d 436, 443 (D.C. Cir. 2005) (noting that Booker excised mandatory Guidelines provision of 18 U.S.C. § 3553(b) but that § 3553(a)'s specification of factors that guide federal sentencing, including application of Guidelines, remains in effect). As the Price Court stated, "[t]hese factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with needed educational or vocational training, any pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted disparities among similarly situated defendants, and the need to provide restitution to any victims." Id. at 442 (citing § 3553(a)).

As set forth in the Presentence Investigation Report ("PSR"), the recommended sentencing range under the Guidelines is 10 to 16 months, with at least half of the bottom of the range (5 months) being served in prison and any remaining portion may be served in home detention or community confinement. PSR at ¶¶ 66, 66a. However, when sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." Gall v. United States, 128 S.Ct. 586, 596-597 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider. Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors sets forth in § 3553(a). Gall, 128 S.Ct. at 597. Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] … sentences that might achieve § 3553(a)'s objectives," Booker and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. Consequently,

2

this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." Rita v. United States, 127 S.Ct. 2456, 2463, 2465, 2469 (2007); see also Gall, 128 S.Ct. at 598 ("[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" (quoting Koon v. United States, 518 U.S. 81, 113 (1996))).  When the Guidelines' "rough approximation" conflicts with the Court's view of the sentence warranted by other § 3553(a) factors, the Court may disregard the sentencing range recommended by the Guidelines in favor of one that is tailored to the circumstances of the defendant.  Rita v. United States, 127 S.Ct. at 2463–2464 ("[t]he sentencing courts, applying the Guidelines in individual cases may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence)").

      Here, the remaining § 3553 factors demonstrate that a sentence below the recommended range would be appropriate.  The bottom of the recommended range is a sentence of 5 months incarceration and 5 months in home detention or community confinement, as a condition of supervised release.  For the reasons set forth below, deviating slightly from that range to impose a sentence of probation with community service would be appropriate.

      The most important consideration for the District Court in sentencing Mr. Jarrell must be  the directive of Congress to "impose a sentence sufficient but not greater than necessary, to comply with [the purposes of sentencing]".  18 U.S.C. § 3553(a).  See e.g., United States v. Minisro-Tapia 470 F.3d 137, 142 (2d Cir. 2006); United States v. Yopp, 453 F.3d 770, 774 (6th Cir. 2006); United States v. Rodriguez-Rodriguez, 441 F.3d 767, 770 (9th Cir.

2006); United States v. Ranum, 353 F. Supp.2d 984, 986 (E.D.Wis. 2005). While the standard on appeal is whether the sentence is reasonable, that is not the standard for the District Court. United States v. Collington, 461 F.3d 805, 807 (6th Cir. 2006) ("a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task."); United States v. Foreman, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task").

It is clear that in the post-Booker world of advisory Guidelines, the sentencing judge has broad discretion to impose a non-Guidelines sentence where appropriate after considering the pertinent § 3553(a) factors. As articulated recently by the Second Circuit, "[a]lthough the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all of the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness." United States v. Jones, 460 F.3d 191, 195 (2nd Cir. 2006) (upholding non-Guidelines sentence of 15 months' imprisonment, which was 15 months below bottom of applicable range).

"A sentencing judge *cannot presume* that a Guidelines sentence is the correct sentence." United States v. Pickett, (No. 05-3179, D.C. Cir. February 13, 2007, *slip op.* at 12)

(emphasis added).  Rather, the correct approach "is to evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." Id

On appeal, a sentence below the advisory guidelines range will be deemed reasonable if the court expresses its "reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005).  Justifying a sentence outside the range does not require canvassing all the factors set forth in § 3553(a), "' it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.'"  United States v. George, 403 F.3d 470, 473 (7th Cir. 2005)).  A sentence is reasonable if imposed "for reasons that are logical and consistent with the factors set forth in 3553(a)." United States v. Williams, 425 F.3d 478, 481 (7th Cir. 2005).  In United States v. Kicklighter, 413 F.3d 915, 917 (8th Cir. 2005), the court upheld a sentence imposed, after considering the guidelines, that was 68 months below the bottom of the advisory guidelines range, based upon the defendant's having been "off drugs" for two years, and "holding a job, and supporting a family."  The court in Kicklighter found that the sentence reflected the "factors in 18 U.S.C. §3553(a)."  Id.

The Court's exercise of sentencing discretion to impose a sentence well below the guidelines range in this case is supported by two other statutory sentencing provisions. Under 18 U.S.C. § 3661, which was expressly endorsed by the Booker majority, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." Moreover, 18 U.S.C. § 3582 directs that in determining whether to impose a sentence of incarceration, sentencing courts

"shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that this Court may consider all relevant sentencing factors, including prohibited Guidelines departure factors, in fashioning an individualized sentence in this case. See United States v. Gomez, 431 F.3d 818, 825 (D.C. Cir. 2005) ("[i]f Booker's rendering the Guidelines discretionary means anything, it must give a district judge greater latitude on these [prohibited departure] issues than did Koon [v. United States, 518 U.S. 81 (1996)]." The decision in United States v. Serrata, 425 F.3d 886 (10th Cir. 2005), is also instructive on this point. In that case, in pre-Booker sentencings, the district court had granted each of three defendants a five-level downward departure for factors such as family ties and responsibilities, employment record, community support, lack of a criminal record, and civic and public service. Although the court of appeals held that those prohibited factors were not sufficiently unusual or exceptional to justify the departures, it held that these same factors were relevant under §3553(a) to the district court's consideration, on remand, of whether a post-Booker sentence below the advisory Guidelines range was appropriate. Id. at 910-15, 918-20. The court noted that there "appears to be tension among the statutes and the guidelines . . . [b]ut, in the wake of Booker, the incongruity diminishes as *sentencing judges are encouraged to exercise their discretion*." Id. at 918-19 (emphasis added).

As noted above, the purposes of sentencing are:

A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      B) to afford adequate deterrence to criminal conduct;

      C) to protect the public from further crimes of the defendant; and

      D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

### RELEVANT CONSIDERATIONS FOR SENTENCING

**I.    History and Characteristics of Mr. Jarrell**

The Court should consider Mr. Jarrell's contributions to society through his community activities, and his particularly unique family responsibilities as the sole provider and caretaker for the disabled adult for whom he cares. Mr. Jarrell is a respected member of his community who has a long history of living and working in the District of Columbia. Despite the fact that he is 52 years old, he has no significant prior criminal activity and has no criminal history points. Mr. Jarrell does not come from wealth or privilege and he lives a very modest lifestyle. This is not a crime of greed or avarice, but rather a crime of negligence. He knew he was required to file income tax returns and did not make it the priority he should have made it. This was in large measure a function of many stress factors which are described in greater detail in the attached letters of support. (See Exhibit A). Since 2004, Mr. Jarrell has been caring for an adult

who suffered a devastating brain injury. He is the sole caretaker for this gentleman, who, without Mr. Jarrell, would be both a financial drain on society and more importantly, without any family to care for him.

The Court can also consider Mr. Jarrell's favorable reputation in the community when it considers what sentence to impose. See United States v. Wachowiak, 412 F. Supp.2d 958, 963 (E.D. Wis. 2004) (court considered strong support from family and community, and "otherwise outstanding character, as depicted in the many supportive letters" among other factors in sentencing defendant below advisory range because guidelines only consider criminal history and 3553 requires consideration of character of defendant.)

The Court should also consider the fact that there is no evidence to suggest that Mr. Jarrell was motivated by greed or any belief that he should not be required to pay taxes. Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993) ("The defendant's motive for committing the offense is one important factor [in determining the sentence]"); United States v. Milne, 384 F.Supp.2d 1309 (E.D. Wis. 2005) (motive is relevant to sentencing; "with their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability"); United States v. Ranum, 353 F.Supp.2d 984, 990 (E.D. Wis. 2005) (when defendant did not act for personal gain, lower sentence appropriate).

**III.     Mr. Jarrell Does Not Have a High Probability for Recidivism.**

Mr. Jarrell is an older man with no significant criminal history; as a result, he is statistically less likely to recidivate. Under the guidelines, age was not normally relevant to sentencing. However, several courts and the sentencing commission itself have noted that recidivism drops substantially with age. See Measuring Recidivism: The Criminal History

Computation of the Federal Sentencing Guidelines, at 12, 28 (2004),

www.ussc.gov/publicat/Recidivism_General.pdf ("recidivism rates decline relatively consistently as age increases," from 35.5% for under age 21 to 9.5% over 50).  "The Guidelines' failure to account for this phenomenon renders it an imperfect measure of how well a sentence protects the public from further crimes" of a particular defendant.  Simon v. United States, 361 F. Supp.2d 35, 40 (E.D.N.Y. 2005).  A number of courts have considered this as a factor in sentencing defendants below the advisory guidelines range.  See e.g., United States v. Wadena, 470 F.3d 735, 740 (8th Cir. 2006) (where 67 year old defendant convicted of mail fraud and guidelines suggested sentence of 18 to 24 months, proper for district court to impose probation because "Wadena's age and recent deterioration in his health reduce the risk of re-offending"); United States v. Lucania 379 F. Supp. 2d 288, 297 (E.D.N.Y. 2005) ("Post Booker courts have noted that recidivism is markedly lower for older defendants."); United States v. Carmona-Rodriguez, 2005 WL 840464, at *4 (S.D.N.Y. April 11, 2005) (court imposed lesser sentence because defendant was older (55) and thus there was a lower probability of recidivism).

The Department of Justice has recognized "management problems with elderly inmates . . . are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment.  *Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. Department of Justice, National Institute of Corrections, 2004 edition, pp 9 and 10.  (Throughout the report the "elderly" are defined by the various institutions as 50 or older).  The report also notes that first time offenders (which Mr. Jarrell is) are "easy prey for more experienced predatory inmates."  Id.

9

**IV.     A Shorter Sentence Is Sufficient to Promote Respect for the Law**.

Respect for the law is promoted not by inordinately harsh sentences, but by justice tempered with mercy. Respect for the law is not born of unnecessarily lengthy sentences, but of sentences appropriate for each individual defendant under the particular circumstances of the case. Why else would Congress dictate that the sentencing court determine what sentence is "sufficient but not greater than necessary" to satisfy the purposes of sentencing? In this case, considering that the offense is a misdemeanor offense, a probationary sentence is more than adequate to promote respect for the law. Mr. Jarrell has publicly acknowledged his guilt and will have to live with the consequence of a criminal conviction.

**V.      Mr. Jarrell Can Contribute Much to Society If He Is Released Rather than Be a Drain on Society If Incarcerated.**

It is also appropriate for the Court to consider the costs of incarceration and to weigh that against the necessity for it and other alternatives available to the Court. See e.g., United States v. Moreland, 366 F.Supp.2d 416, 422 (S.D.W.Va., 2005); United States v. Angelos, 345 F. Supp.2d 1227 (D. Utah 2004); United States v. Chavez, 230 F.3d 1089, 1092 (8th Cir. 2000 (Bright, J., concurring); United States v. Hughes, 825 F. Supp. 866, 868 (D. Minn. 1993). In this case, a probationary sentence with a community service component would be an appropriate sentence.

**VI.     The Offense is Serious, but the Guideline Range Overstates the Seriousness of Offense**

Mr. Jarrell recognizes that this was a serious offense and makes no excuses for his conduct. He fully accepts responsibility for the offense. As part of the plea agreement, the parties agreed that the loss amount for purposes of determining the advisory guidelines range was

10

$30,000. This figure was based upon what the IRS investigators believed Mr. Jarrell's tax liability was. Mr. Jarrell is in the process of having his taxes filed and believes that that amount may be overstated. The IRS agents assigned to the case made a determination in good faith of the estimated loss amount, but since the time he entered his plea, Mr. Jarrell has been advised both by competent tax advisors and the IRS helpline that he may properly consider the gentleman for whom he cares a "dependent" thus decreasing his tax liability. This is a misdemeanor offense and the only suggestion of any jail sentence being appropriate is based upon the taxes owed.

### VII. The Need to Deter Mr. Jarrell and Others Is Sufficiently Met by a Probationary Sentence.

A sentence that does not involve a period of incarceration would be sufficient to afford adequate deterrence to criminal conduct. Mr. Jarrell's prosecution for this offense has had a significant effect of him and his family. No period of incarceration is necessary to protect the public from further crimes of Mr. Jarrell -- there will be no further crimes. The effect that this case has had on his life – absent any period of incarceration – is sufficient to guarantee that he will never commit another offense. Moreover, as the United States Sentencing Commission has recognized, defendants without any prior contact with the criminal justice system are unlikely to recidivate. See United States Sentencing Commission, Recidivism and the "First Offender", A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) (offenders with no prior arrests or convictions have the lowest recidivism rate).

Nor is a sentence of incarceration necessary to deter others. Mr. Jarrell has and will continue to be punished for his conduct. To the extent that would-be offenders are deterred by the sentences of others, Mr. Jarrell's public humiliation and damaged reputation would

sufficiently deter any similarly situated individuals.

Finally, no period of incarceration is necessary "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." See 18 U.S.C. § 3553(a). Mr. Jarrell is employed and responsibly caring for another disabled adult. A sentence that includes a period of incarceration would cause undue burden on society as well as being unnecessary to meet the goals of sentencing. Here, rather than imposing a period of incarceration, the Court can impose a period of probation with community service. A sentence of probation itself is a "'substantial restriction of freedom.'" Gall, 128 S.Ct. at 595 (citation omitted). As the Supreme Court has explained:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

Id. at 595-96 (footnote omitted).

Here, an alternative to incarceration is an appropriate form of punishment in light of Mr. Jarrell's background and characteristics. A probationary sentence is indeed a harsh sentence where (1) the defendant is a first time offender; (2) the defendant has lost his job; (3) the

reputation the defendant gained through years of professional work is forever damaged; (4) the defendant's wife and young children have suffered immensely; and (5) the consequences of the felony conviction on the defendant's former life will be long-lasting.  See http://www.whitehouse.gov/news/releases/2007/07/20070702-3.html, Statement of President George W. Bush, accompanying Proclamation 8159, Grant of Executive Clemency, 72 FR 37095 (July 2, 2007).  Permitting Mr. Jarrell to remain in the community and working will best allow him to pay his back taxes and to continue to care for his dependent, both of which should be encouraged.

## Conclusion

For all of the foregoing reasons and such other reasons as may be presented at the sentencing hearing, the Court should impose a sentence that does not include a period of incarceration.  Such a sentence would be reasonable and appropriate.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


/s/
_____
Michelle Peterson
Assistant Federal Public Defender
625 Indiana Avenue, N.W. Suite 550 Washington, D.C.  20004
(202) 208-7500, ext. 125



# National Rehabilitation Hospital

Adding life to years®

**National Rehabilitation Hospital**
102 Irving Street, NW
Washington, DC 20010-2949

phone: 202 877 1000
fax: 202 829 5180
tdd: 202 877 1450
internet: www.nrhrehab.org

May 22, 2008
Re: Keith Jarrell

Shelli Peterson Esq.
Legal Representative to Keith Jarrell
Washington D.C.

Dear Ms. Peterson,

I have been asked to serve as a reference for Mr. Keith Jarrell as he attempts to cope with his business and personal financial challenges that were being juggled during the horrible healthcare crisis that engulfed his family in 2004 and thereafter. I am able to speak very directly to Mr. Jarrell's remarkable investment of time and energy to cope with a serious family trauma.

I had the pleasure of witnessing first hand the remarkable, near miraculous recovery of Mr. Louis Imeri from a severe brain injury. As the literature suggests, the best prognostic indicators for significant recovery from serious brain injury are age, early onset medical intervention and family support. Louie had all three variables working for him. He is a young man who was treated acutely at a local trauma center and had the 24/7 support of his devoted an unstinting caregiver, Mr. Keith Jarrell. I am the Vice President, Clinical Services, Quality and Compliance at the National Rehabilitation Hospital (NRH) in Washington D.C.. Once Mr. Imeri was medically stable, he was transferred from the trauma center to NRH for his acute rehabilitation. Once Louie was discharged from NRH, Louie had a brief stint of therapy in the home and then returned to NRH for outpatient rehabilitation treatment and medical follow-up. Throughout this long and often traumatic period of recovery for Mr. Louie Imeri, there was one constant that Louie and the healthcare providers could count on- that Keith Jarrell would not only be there but be a strong and unwavering patient advocate. I can testify that Mr. Jarrell spent most days and nights at NRH when Louie was an inpatient at NRH. I also recall that when Louie was discharged home, Mr. Jarrell had to take a leave of absence from work since Louie required Keith's oversight and supervision in tandem with a paid "sitter." In both the acute rehab and home care stages, Mr. Imeri was observed to be progressing through the classic brain-injury stages of recovery that include agitation, combativeness and restlessness. No one, not even Louie's healthcare providers, was better able than Keith Jarrell to assist Louie during these unpredictable periods when Louie needed to calm down and de-escalate in order to protect himself and others from harm. Mr. Jarrell became an indispensable and accomplished caretaker with emphasis on the "care" aspect!

In my administrative role at NRH as well as in my former clinical role as NRH's Director of Speech Language Pathology, I have worked with nearly a thousand families following stroke or head injury. In my estimation, Mr. Jarrell is one of the most dedicated and yes, assertive caregivers that I have ever encountered. Mr. Keith Jarrell had put his life on hold as he partnered

*The NRH Medical Rehabilitation Network*          *MedStar Health*

with healthcare providers to help Louie through this medical and behavioral crisis. Hopefully the government will put in context and appreciate the challenges Mr. Jarrell faced in coping with a multiplicity of stressors in his life. The lost wages, mental anguish, distress, and as well as the added expenses of paying for necessary therapy and medical equipment and materials to subsidize and support Mr. Louie Imeri during this saga has been incalculable. I fully support Mr. Jarrell's claim that his life was in a medical meltdown during this period and that any errors in business or personal finances could easily be at least partially attributed to the above described medical crisis. I know Mr. Jarrell as an honorable and responsible adult and would be happy to so testify to his reputation and history that I have described above.

Sincerely,

Paul R. Rao Ph.D. CCC CPHQ CHE
Vice President, Clinical Services, Quality and Compliance
Privacy Liaison

April 30, 2008

Dear Magistrate Judge Robinson:

I have known Mr. Keith Jarrell for over a year, during which time I have worked with him on a number of community activities and become a personal friend of his. Mr. Jarrell and I are both actively involved in our neighborhood (the Petworth/Brightwood area of Washington, DC) where we have worked with the Metropolitan Police Department (MPD), local community groups, and elected officials to address the serious, violent crime in our area of the city. Together, we have organized community walks, coordinated efforts (and cooperated) with the MPD to address violent crime, and met with elected officials to determine how our city can better address violent crime. Mr. Jarrell has volunteered a significant amount of time towards these efforts because, like myself, he wants to make our community a safer place for all our residents.

As part of these efforts, I have also had the opportunity to spend a significant amount of time in Mr. Jarrell's home. Mr. Jarrell has dedicated much of his life to caring for Louie, his friend who suffered a severe and life-altering brain injury after being hit by a car. I have seen first-hand what Mr. Jarrell has sacrificed to care for Louie. Caring for Louie is a 24-hour-a-day job that requires an extensive amount of patience, time, and compassion. As someone with a brain injury, Louis has memory loss, behavioral issues, and the myriad of other medical problems that someone experiences after suffering such a devastating injury. Louie has made amazing strides in his recovery, and this progress has only been possible because of the tireless energy and extensive resources that Mr. Jarrell has dedicated, and continues to dedicate, to Louie. Because of all that Mr. Jarrell has done for him, Louie has been able to live in the community and participate in life, something that many people with such significant injuries are often not able to do.

I am happy to provide further information if required.

Sincerely,

Andrea Richardson
610 Longfellow St NW
Washington, DC 20011
(202) 425-3037